[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff Michael Brown and the defendant, whose maiden name was Chung, Suk Cha, were intermarried at St. Louis Missouri, on June 18, 1971. The plaintiff husband commenced this action for dissolution of the parties' marriage on the ground of irretrievable breakdown. The defendant wife filed an answer admitting the allegations of the complaint and also filed a cross complaint alleging irretrievable breakdown and seeking alimony and other relief, as on file.
The couple have one child who has reached the age of majority, although he continues to reside with the defendant in the former marital residence, which the plaintiff had quitclaimed to her as part of the pendente lite procedures in this matter. There are no minor children issue of this marriage, and no other children have been born to the wife since the date of the marriage of the parties.
Neither party is a recipient of public assistance. All statutory stays have expired, and the court has jurisdiction by virtue of residency. The parties have stipulated that their marriage has broken down irretrievably, with no reasonable hope of reconciliation, and the court so finds. A decree will enter dissolving the marriage on that ground.
Each party was represented by counsel at trial, each CT Page 2887 testified, and each submitted a financial affidavit. The defendant introduced one document into evidence. At the conclusion of the testimony, the parties filed claims for relief setting forth their respective positions relating to the matters at issue. The court has carefully reviewed and considered these claims as well as all the statutory criteria contained in General Statutes §§ 46b-81 and 46b-82.
The parties have stipulated to the following facts:
1. The duration of the marriage is approximately 25 years.
2. The age of the plaintiff is 47 years; the age of the defendant is 57 years.
3. Both parties presently have health problems. The plaintiff is diabetic, for which condition he takes oral medication. He also suffers from asthma and uses an inhaler regularly. He has suffered from depression, for which he has been treated medically in the past, although he is not presently receiving medical care for this condition. The plaintiff's medical problems have not as of this time precluded his ability to perform his present employment.
4. The defendant suffers from high blood pressure and fibromyalgia, a form of rheumatism whose symptoms include muscular pain and sleep disorders. She is medicated regularly for those conditions.
5. The parties have enjoyed a middle class lifestyle during most of their marriage and have owned a residence during most of their marriage.
6. The defendant shows no income on her financial affidavit nor has she during the pendency of this action. The plaintiff's income is as shown on his financial affidavit and has remained consistent during the pendency of this action. His gross annual income is $74,000.
7. With regard to education, the plaintiff completed high school and two years of college. The defendant obtained a high school education in Korea.
8. With regard to vocational skills, the plaintiff is employed as a technical director, managing computer technicians CT Page 2888 for Traveler's Insurance Companies, by whom he has been employed for 21 years. The defendant has been employed during the marriage as a factory assembler and was last employed in 1988 as a room service attendant for Ramada Inn.
9. With regard to property, the defendant owns a one-half interest in real estate located at 60 Genest Street, Meriden, Connecticut, with approximate equity of $2500. Said property was transferred to the defendant and her adult son by the plaintiff in June, 1995 at which time they also refinanced the outstanding mortgages on said property. The plaintiff owns no real estate, but he has 401(k), stock option and vested pension plans with his employer. The defendant has no pension or retirement plans.
In addition to these facts to which the parties have stipulated, the court also makes the following findings:
The parties have divided their personal property to their mutual satisfaction, with the exception of a battery charger, still in the possession of the wife, which the husband would like returned to him. The parties also divided their bank accounts at the time that they separated. The parties offered differing testimony as to how a variety of certificates of deposit, other savings and proceeds from the sale of a boat were dissipated. The plaintiff believes that the defendant squandered a good deal of the family's joint savings on gambling and on a trip to her native Korea in 1989. The plaintiff admits that she gambles, although she claims that most of the times that she has done so, it has been in the company of her husband. She acknowledges, however, three or four trips a year to the Foxwoods Casino on solo gambling outings. The plaintiff, for his part, acknowledged a trip to Florida shortly after the couple's separation, which he undertook in the company of a female friend and on which he spent several thousands of dollars. The defendant also claimed that during her trip to Korea, the plaintiff spent down a large percentage of the couple's joint savings.[1]
In the absence of any tangible evidence on this subject, this court concludes that neither party was disproportionately reckless in the manner in which the couple's joint savings have been dissipated. It does not consider the manner in which these joint assets were lost in making its determinations with regard to the financial orders in this case.
Nor does the court find that either party bears a CT Page 2889 disproportionate share of the blame for the breakdown of this marriage. There were suggestions that the husband had called the wife "fat and ugly" and that the wife had physically abused her husband. Neither of these allegations was developed to the point that the court gives them any credence. Each has experienced and is currently experiencing a variety of personal problems, still unresolved, which have contributed, in more or less equal part, to the breakdown of this marriage. The court therefore does not consider fault in making its economic awards.
The couple was able to earn some additional income through the breeding of Yorkshire Terrier puppies. The wife still has one pair of such dogs and will apparently be able to make some modest income by continuing to breed them. Beyond that, however, her employment prospects appear dim. Although the husband has encouraged her to work in recent years, she has not done so. It is her claim that her physical disabilities make work impossible. To be sure, she appeared quite feeble during her court appearance. She did not offer evidence, however, to the effect that her treating physicians had advised her not to work, and indeed, no medical reports or testimony were provided to the court, making it difficult to assess her claim of inability to work. In addition to her physical disabilities, the wife's English language skills are minimal. A Korean interpreter was present throughout the trial, although it was clear that the wife understood a good deal of what was happening without interpreter assistance. It was clear, however, that her English comprehension skills are weak, and her ability to speak the language is even weaker.
At her last job, at the Ramada Inn, she was able to work thirty hours per week at minimum wage plus tips. Prior to that, in "light assembly" work in factories, she was able to net $130 to $140 per week. Under the best of circumstances, it is apparent that the wife will be able to provide little income based on her own labor. She is able to keep up with housework, with the assistance of her son, who does the heavier work around the home.
A second mortgage on what was the family residence was used to finance the son's education. The son has been paying back this loan since 1994. The plaintiff has also taken a loan against his 401(k) plan. There is a balance due of $1,928 on that loan, which he is paying at the rate of $26 per week. Chrysler Credit has been threatening to take action with regard to a $4500 obligation in which the plaintiff was a cosigner for a relative of his wife. CT Page 2890 He has not been making payments on this loan.
Based on the stipulations of the parties and the court's findings, the court therefore enters the following orders:
1. The husband shall pay periodic alimony to the wife in the amount of $2000 per month, payable at the rate of $1000 on the first day of each month and $1000 on the fifteenth day of each month. The defendant shall immediately advise the plaintiff of any employment she obtains earning over $100 per week net.
2. The husband shall transfer to the wife all of his right, title and interest in and to the 1987 Ford Taurus automobile.
3. The husband shall cooperate with his employer in securing medical insurance benefits for the wife under COBRA, and the wife shall pay the cost of such insurance.
4. Each party shall be responsible for the debts appearing on his or her respective financial affidavit and shall hold the other harmless from liability thereon, with the exception of the contingent liability of the husband for Chrysler Credit Corporation, for which the parties shall be equally liable in the event Chrysler Credit Corporation asserts liability against the husband as cosigner on said obligation.
5. The wife shall retain all furnishings and personal property on real property located at 60 Genest Street, Meriden, Connecticut 06450, with the exception of the battery charger, which shall be the property of the husband.
6. The husband shall make the wife the sole irrevocable beneficiary of a life insurance policy maintained by him through his employment in the amount of $74,000. The husband shall increase the value of said policy annually to the extent that he is permitted to do so at no additional cost to him, pursuant to the terms of his employment.
7. The husband's 401(k)/thrift plan shall be divided equally between the parties, with the outstanding loan being charged against the husband's share.
8. The husband shall be entitled to the value of the stock options available to him through his employment, but he shall name the wife as the beneficiary of his 401(k), stock options and CT Page 2891 pension if permitted by the plans to do so.
9. The husband shall pay to the wife $2000 in counsel fees within ninety days.
Jonathan E. Silbert, Judge